BEN SUTER, CASB No. 107680
ben.suter@kyl.com
ANDREA TRUCIOS, CASB No. 333503
andrea.trucios@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
578 Jackson Street
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Defendant
EQUINITI TRUST COMPANY, LLC
erroneously named herein as EQUINITY TRUST COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PartyOne,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUINITY TRUST COMPANY, a New York limited liability company,<br>FIFTH THIRD BANK, N.A., a national banking association,<br>THE TRAVELERS COMPANIES, INC., a Minnesota corporation,<br>JODY LON MILLARD, an individual, and DOES 1-25, inclusive<br><br>Defendants. | Case No. 3:25-cv-01853-EMC<br><br>**STIPULATION RE FILING OF THIRD-PARTY COMPLAINT AGAINST FIFTH THIRD BANK, N.A.; [PROPOSED] ORDER** |
| EQUINITI TRUST COMPANY, LLC<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>FIFTH THIRD BANK, N.A.,<br><br>Third-Party Defendant. | |

**STIPULATION**

Further to (i) the October 14, 2025 Joint Case Management Conference Statement (Dkt. 40) filed by Plaintiffs FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, and NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022 ("Plaintiffs") and Defendant EQUINITI TRUST COMPANY, LLC ("Equiniti"), and (ii) the October 21, 2025 Case Management Conference held before the Honorable Edward M. Chen, Plaintiffs and Equiniti hereby stipulate as follows:

1. Equiniti may file a Third-Party Complaint against previously dismissed defendant FIFTH THIRD BANK, N.A. ("Fifth Third Bank") without filing a motion for leave of court as would be otherwise required under FRCP Rule 14(a).

2. A copy of Equiniti's proposed Third-Party Complaint against Fifth Third Bank is attached hereto as **Exhibit A**.

3. The Early Neutral Evaluation ("ENE") deadline of November 25, 2025 is continued to January 31, 2026 to allow for Fifth Third Bank's participation in the ENE after it is brought back into the lawsuit via Equiniti's Third-Party Complaint.

IT IS SO STIPULATED

DATED: October 27, 2025

PAUL H. MELBOSTAD
VLADISLAV P. VILTMAN g3mh, LLP
Attorneys for Plaintiffs/Third-Party Defendants FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999 and NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022

DATED: October 27, 2025

BEN SUTER
ANDREA TRUCIOS
KEESAL, YOUNG & LOGAN
Attorneys for Defendant
EQUINITI TRUST COMPANY, LLC erroneously named herein as EQUINITY TRUST COMPANY

**[PROPOSED] ORDER**

GOOD CAUSE APPEARING, the Court Orders as follows:

1. Equiniti may file a Third-Party Complaint against previously dismissed defendant FIFTH THIRD BANK, N.A. ("Fifth Third Bank") without filing a motion for leave of court as would be otherwise required under FRCP Rule 14(a).

2. The ENE deadline of November 25, 2025 is continued to January 31, 2026.

IT IS SO ORDERED.

DATED: October __, 2025

______________________________________
United States District Court Judge Edward M. Chen

# Exhibit A

BEN SUTER, CASB No. 107680
ben.suter@kyl.com
PAULA ANDREA TRUCIOS, CASB No. 333503
andrea.trucios@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
578 Jackson Street
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Defendant/Third-Party Plaintiff
EQUINITI TRUST COMPANY, LLC
erroneously named herein as EQUINITY TRUST
COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, | NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022,

Plaintiffs,

vs.

EQUINITY TRUST COMPANY, a New York limited liability company,
FIFTH THIRD BANK, N.A., a national banking association,
THE TRAVELERS COMPANIES, INC., a Minnesota corporation,
JODY LON MILLARD, an individual, and
DOES 1-25, inclusive

Defendants.

---

EQUINITI TRUST COMPANY, LLC

Third-Party Plaintiff,

vs.

FIFTH THIRD BANK, N.A.

Third-Party Defendant.

Case No. 3:25-cv-0l853-EMC

**THIRD-PARTY COMPLAINT OF EQUINITI TRUST COMPANY, LLC AGAINST THIRD-PARTY DEFENDANT FIFTH THIRD BANK, N.A. [FRCP 14(A)(1)]**

Defendant and Third-Party Plaintiff, EQUINITI TRUST COMPANY, LLC ("Equiniti") hereby complains and alleges the following against former Defendant and now Third-Party Defendant FIFTH THIRD BANK, N.A. ("Fifth Third Bank") as follows:

## I. OVERVIEW OF EQUINITI'S CLAIMS AGAINST FIFTH THIRD BANK

### Introduction

1. Fifth Third Bank is very familiar with (i) the present litigation, and (ii) its legal and contractual obligations to Equiniti that are at issue in this litigation. Despite repeated demands by Equiniti that Fifth Third Bank honor its obligations as a guarantor under the Securities Transfer Agents Medallion Program ("STAMP" or "Medallion Signature Guarantee Program") and its obligations under the California Commercial Code, Fifth Third Bank has to date failed and refused to do so. It has hence become necessary for Equiniti to file this Third-Party Complaint against Fifth Third Bank and to bring it back into this litigation so that Fifth Third Bank honors its obligations.

### Procedural Background

2. On January 31, 2025, Plaintiffs FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, and NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022 ("Plaintiffs") filed suit in San Francisco Superior Court against Equiniti, Fifth Third Bank and The Travelers Companies, Inc. ("Travelers"), Case No. CGC-25-621996 ("Complaint"). A true and correct copy of Plaintiffs' Complaint is attached hereto as **Exhibit 1** and incorporated by reference as if fully set forth herein.

3. On February 20, 2025, Fifth Third Bank removed the Complaint to Federal Court. (Dkt. #1.) On May 13, 2025, Plaintiffs voluntarily dismissed Fifth Third Bank and its insurer (Travelers) without prejudice from the lawsuit. (Dkt # 23.)

4. On May 14, 2025, Equiniti answered the Complaint and set forth numerous affirmative defenses, including Indemnity (Third Affirmative Defense: "Equiniti states that if there is any verdict in favor of Plaintiffs and against Equiniti, then Equiniti is entitled to indemnity from Co-Defendant, Fifth Third Bank, N.A.") and Contribution (Fourth Affirmative Defense: "Defendants state that if there is any verdict in favor of Plaintiff and against Defendants, then Defendants are entitled to contribution from other persons or entities, specifically, from Co-Defendant Fifth Third Bank, N.A." (Dkt. #24.) A

true and correct copy of Equiniti's Answer to Plaintiffs' Complaint is attached hereto as **Exhibit 2** and incorporated by reference as if fully set forth herein.

5. On May 28, 2025, in lieu of Equiniti filing a Third-Party Complaint for Indemnity and related claims against Fifth Third Bank and Travelers under FRCP 14(a) within the 14-day timeframe set forth therein, Equiniti, Fifth Third Bank and Travelers entered into a Tolling, Standstill and Non-Waiver Agreement ("Tolling Agreement").

6. On October 21, 2025, Plaintiffs and Equiniti stipulated at the Case Management Conference before the Honorable Edward M. Chen that it would not be necessary for Equiniti to file a motion under FRCP 14(a) to bring Fifth Third Bank back into the lawsuit, and Judge Chen approved the filing of this Third-Party Complaint without Equiniti filing a motion under FRCP 14(a).

**Fifth Third Bank's Contractual and Statutory Liability to Equiniti**

7. Equiniti's claims set forth herein are simple: if Equiniti is somehow found to be liable to Plaintiffs for alleged Wrongful Registration and Transfer of Securities, as Plaintiffs maintain in their single cause of action against Equiniti (**Exhibit 1**, 4:21-10:22), then Fifth Third Bank is strictly liable to Equiniti under the Medallion Signature Guarantee Program ***and*** under the California Commercial Code, including but not limited to Sections 8115 and 8306.[1]

## II. THE PARTIES

**Plaintiffs**

8. According to Plaintiffs' Complaint, "Plaintiff FANI KOKKOROS ("Kokkoros" or "successor Trustee") is the current Trustee of the Spilios Mousalimas Trust dated May 3, 1999 (the "Trust"), nominated in the Trust by the Settlor/Trustor Spilios Mousalimas ("Spilios") to serve as successor Trustee when Spilios died or became no longer able to serve as Trustee" (**Exhibit 1**, ¶ 1) and "Plaintiff NICK G. TARLSON, ("TARLSON" or "Special Trustee") is a Certified Public Accountant, who has been serving as the accountant and tax preparer for the Trustee of the Trust, and has been

[1] If and to the extent that the strict liability provisions of the California Commercial Code are held to inapplicable to the facts of this case, then Fifth Third Bank's strict liability to Equiniti will be established by the parallel strict liability provisions of the Uniform Commercial Code ("UCC").

serving as a Special Trustee of the Spilios Mousalimas Trust after being appointed by Trustee Kokkoros on July 12, 2022." (**Exhibit 1**, ¶ 2.)

**Equiniti**

9. Equiniti is a Stock Transfer Agent that was presented with certain stock transfer documents that were guaranteed by Fifth Third Bank pursuant to the STAMP Medallion Signature Guarantee Program. By stamping stock transfer documents with its Medallion STAMP, Fifth Third Bank guaranteed that the transactions about which Plaintiffs complain in their Complaint were legitimate and authorized.

10. Equiniti relied on the signature guarantees that Fifth Third Bank provided to Equiniti.

11. Equiniti had no knowledge of any forgery or any other irregularity or impropriety when it processed the stock transfers in reliance on the signature guarantees that Fifth Third Bank provided to Equiniti.

**Third-Party Defendant Fifth Third Bank, N.A.**

12. According to Plaintiffs' Complaint, Fifth Third Bank "is a national banking association headquartered in Cincinnati, Ohio, which participates in the Medallion Guarantee Program administered by Kemark Financial Services, Inc. A medallion signature guarantee is a special stamp that is used to transfer securities. It confirms that the signature authorizing the transfer is genuine and that the signer has the legal capacity and authority to sign the document. If a financial institution is not a member of a recognized Medallion Signature Guarantee Program, it would not be able to provide signature guarantees. If a signer is not a customer of the participating financial institution, it is unlikely the financial institution will guarantee the customer's signature. FIFTH THIRD issued the Medallion Guarantee of the signature and legal authority of defendant JODY LON MILLARD ("MILLARD") to act as, or on behalf of, the Trustee of the Spilios Mousalimas Trust. Accordingly, FIFTH THIRD is obligated to indemnify EQUINITI and Trustee Kokkoros as the true owner of legal title to the below-described stolen securities and dividend checks for the cancellation, reissuance and transfer of the securities and reissuance of dividend checks to MILLARD. This is based on MILLARD's false and fraudulent assertions that he was the beneficial owner, and/or rightful holder of legal title, and/or had authority to act as, or on behalf of, the Trustee of the Spilios Mousalimas Trust. MILLARD did not have

such authority, and there was no reasonable basis to conclude that he was the owner and/or had such authority." (**Exhibit 1**, ¶ 4.)

**Defendant Jody Lon Millard**

13. According to Plaintiffs' Complaint, Defendant JODY LON MILLARD "is an individual who purports to reside in Aurora, Ohio, but Plaintiffs cannot be certain of his true name or place of residence. This defendant used the name "JODY LON MILLARD" to fraudulently execute a Stock Power Form-discussed infra-that enabled him to initiate and secure the transfer of PG&E and Southern Company common stock shares, along with corresponding dividend checks, which were titled in the name of the Trustee of the Spilios Mousalimas Trust. In doing so, MILLARD made false and fraudulent representations to EQUINITI and FIFTH THIRD, claiming that he was the beneficial owner of the shares, that the share certificates had been lost, and that he had authority to act on behalf of the Trustee of the Mousalimas Trust." (**Exhibit 1**, ¶ 6.)

## III. JURISDICTION AND VENUE

14. This Court has diversity jurisdiction under 28 U.S.C. sections 1332, 1441, and 1446, as conceded by Fifth Third Bank, which removed the case to Federal Court on February 20, 2025.

15. The Court has personal jurisdiction over Fifth Third Bank as it maintains offices in California and has been part of the California business community since 2012.

16. The amount in controversy exceeds the $75,000 jurisdictional minimum of this Court for diversity jurisdiction.

17. According to the Complaint, venue is proper in the Northern District of California because the Trust is being administered here in San Francisco, California at the offices of the attorney for the Trustee, g3mh, LLP, and the office of NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust.

## IV. STATEMENT OF FACTS

18. According to the Complaint, beginning in late 2021, Defendant MILLARD allegedly carried out a scheme to wrongfully obtain nearly $2 million in trust assets from the Trust, by submitting falsified stock transfer documents to Equiniti, the stock transfer agent. These documents were presented to Equiniti by Fifth Third Bank pursuant to the STAMP Medallion Signature Guarantee Program. Fifth Third Bank guaranteed that the transactions about which Plaintiffs complain in their Complaint were

legitimate and authorized. The Medallion Signature Guarantee program is used by more than 7,000 U.S. and Canadian financial institutions to efficiently effect transfers of securities. *See,* U.S. Securities & Exchange Commission's Investor.gov website (https://www.investor.gov/introduction-investing/investing-basics/glossary/medallion-signature-guar-antees-preventing), which confirms that "Transfer agents insist on medallion signature guarantees because they limit their liability and losses if a signature turns out to be forged."

19. Equiniti had no knowledge of any forgery or any other irregularity or impropriety when it processed the stock transfers in reliance on the signature guarantees that Fifth Third Bank provided to Equiniti – as confirmed by Exhibits A, B and C to Plaintiff's Complaint:



**E. Medallion Signature Guarantee**

All current owners or authorized individual(s) must sign their name and have the signature guaranteed by a member of a Medallion Stamp Program. An authorized individual must write their capacity (title) in the space below. The Medallion Guarantor may require additional documentation. The undersigned does (do) irrevocably constitute and appoint Equiniti Trust Company attorney to transfer the said stock on the books of said Company with full power of substitution in the premises. Medallion Signature Guarantees can be obtained from financial institutions, including commercial banks, brokers, and credit unions. *(See the FAQ Medallion Signature Guarantee for more information)*

Signature of all registered owners or legal representatives

X

X

Title of Legal Representatives, if applicable:

X VERIFIED

JAN 13 2022
EQSS Notation

VERIFIED
NOV 23 2021
EQSS No...

Note to Guarantor: Medallion Stamp must be fully legible and must **NOT** be dated or annotated.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
FIFTH THIRD BANK, N.A.
(1093) AUTHORIZED SIGNATURE X9014922
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

VERIFIED
FEB 15 2022
EQSS Notation

Page 1 of 2
SP SOnL 12/18
DOM V5.3

**Exhibit B**



Note to Guarantor: Medallion Stamp must be fully legible and must **NOT** be dated or annotated.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
FIFTH THIRD BANK, N.A.
(1093) AUTHORIZED SIGNATURE X9014922
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

**Exhibit A**



Note to Guarantor: Medallion Stamp must be fully legible and must **NOT** be dated or annotated.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
FIFTH THIRD BANK, N.A.
(1093) AUTHORIZED SIGNATURE X9014922
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

**Exhibit C**

## V. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

(Contractual Indemnity – Against Fifth Third Bank)

20. Equiniti re-alleges and incorporates by reference all preceding paragraphs of this Third-Party Complaint.

21. Fifth Third Bank is a guarantor under the Medallion Signature Guarantee Program, a true and correct copy of which is attached hereto as **<u>Exhibit 3</u>**.

22. Among the provisions of the Medallion Signature Guarantee Program that are pertinent to this proceeding – and which require Fifth Third Bank to fully indemnify Equiniti – are the following:

> The undersigned ("Guarantor") has adopted (a) a STAMP Imprint for the purpose of executing guaranties of signatures (within the meaning of Section 8-306 of the Uniform Commercial Code) and for the purpose of executing other certifications and guaranties incident to the transfer, payment, exchange, purchase or delivery of securities, including, but not limited to, erasure guaranties and one-and-the-same guaranties, and (b) a STAMP Attorney Release Imprint for the purpose of executing powers of substitution. The STAMP Imprint and the STAMP Attorney Release Imprint are collectively referred to as the "Imprint."

> In consideration of Agents and Issuers interposing no objections to the use of the Imprint for the purposes set forth above, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor does hereby, for itself and its successors and assigns, covenant and agree (a) to indemnify and hold harmless Agents and Issuers, and their officers, directors, agents and employees, in whatever capacity they may act, from and against any and all claims (whether groundless or otherwise), losses, liabilities, damages and expenses, including, but not limited to, costs, disbursements and counsel fees (whether incurred in connection with such claims, losses, liabilities, damages and expenses or in connection with the enforcement of any rights hereunder), arising out of or in connection with the transfer, payment, exchange, purchase or delivery of securities in reliance upon the Imprint, or, if Guarantor's negligence

23. Equiniti has repeatedly demanded that Fifth Third Bank indemnify Equiniti under the Medallion Signature Guarantee Program, but Fifth Third Bank has repeatedly failed and refused to honor its obligations to Equiniti and it has not indemnified Equiniti as required by the Medallion Signature Guarantee Program.

24. As a result of Fifth Third Bank's repeated failure and refusal to honor its obligations to Equiniti as set forth above, Equiniti has been damaged and is entitled to full indemnity from Fifth Third Bank for (i) any liability and all damages that Plaintiffs are successful in attributing to Equiniti related to the related to the stock transfers; (ii) any liability and all damages that Plaintiffs are successful in attributing to Equiniti related to Plaintiffs' attorney's fees and costs in this matter; and (iii) all of Equiniti's attorney's fees and costs incurred by Equiniti (a) defending against Plaintiffs' claims (including those set forth in Plaintiffs' Complaint), and (b) prosecuting this Third-Party Complaint.

**SECOND CAUSE OF ACTION**

(Statutory Indemnity – Against Fifth Third Bank)

25. Equiniti re-alleges and incorporates by reference all preceding paragraphs of this Third-Party Complaint.

26. Under California Commercial Code section 8306, if Equiniti faces any liability to Plaintiffs as a result of its reliance on the signature guarantee provided by Fifth Third Bank, then Fifth Third Bank is liable to Equiniti for any of its resulting loss. Section 8306 provides in pertinent part as follows:

> (a) A person who guarantees a signature of an endorser of a security certificate warrants that at the time of signing all of the following were true:
>
> (1) The signature was genuine.
>
> (2) The signer was an appropriate person to endorse, or if the signature is by an agent, the agent had actual authority to act on behalf of the appropriate person.
>
> (3) The signer had legal capacity to sign.
>
> (b) A person who guarantees a signature of the originator of an instruction warrants that at the time of signing all of the following were true:
>
> (1) The signature was genuine.
>
> (2) The signer was an appropriate person to originate the instruction, or if the signature is by an agent, the agent had actual authority to act on behalf of the appropriate person, if the person specified in the instruction as the registered owner was, in fact, the registered owner, as to which fact the signature guarantor does not make a warranty.
>
> (3) The signer had legal capacity to sign.
>
> ***

> ***(e) A person who guarantees an endorsement of a security certificate makes the warranties of a signature guarantor under subdivision (a) and also warrants the rightfulness of the transfer in all respects.***
>
> ***(f) A person who guarantees an instruction requesting the transfer of an uncertificated security makes the warranties of a special signature guarantor under subdivision (c) and also warrants the rightfulness of the transfer in all respects.***
>
> ***
>
> (h) The warranties under this section are made to a person taking or dealing with the security in reliance on the guaranty, and ***the guarantor is liable to the person for loss resulting from their breach.*** An endorser or originator of an instruction whose signature, endorsement, or instruction has been guaranteed is liable to a guarantor for any loss suffered by the guarantor as a result of breach of the warranties of the guarantor.

(Emphasis added.)

27. Fifth Third Bank guaranteed MILLARD's signature on the stock transfer documents which were presented to Third-Party Plaintiff Equiniti. In doing so Fifth Third Bank warranted that the signature was genuine, MILLARD was an appropriate person to originate the instruction or had authority to do so, that MILLARD had the legal capacity to sign the documents. Further, they warranted the rightfulness of the transfer in all respects. Plaintiffs Kokkoros and Tarlson now allege that MILLARD's representations were false and fraudulent and therefore the transfer was made in error. Section 8306 is clear that Fifth Third Bank is liable to Equiniti for any of loss Equiniti incurs from Fifth Third Bank's breach.

28. As a result of Fifth Third Bank's repeated failure and refusal to honor its obligations to Equiniti as set forth above, Equiniti has been damaged and is entitled to full indemnity from Fifth Third Bank for (i) any liability and all damages that Plaintiffs are successful in attributing to Equiniti related to the related to the stock transfers; (ii) any liability and all damages that Plaintiffs are successful in attributing to Equiniti related to Plaintiffs' attorney's fees and costs in this matter; and (iii) all of Equiniti's attorney's fees and costs incurred by Equiniti (a) defending against Plaintiffs' claims (including those set forth in Plaintiffs' Complaint), and (b) prosecuting this Third-Party Complaint.

## VI. PRAYER FOR RELIEF

WHEREFORE, Equiniti prays for judgment as follows:

1. That Equiniti be found to be not liable to Plaintiffs;

2. If Equiniti is found to be liable to Plaintiffs, that Fifth Third Bank be found to be liable to Equiniti for whatever liability is assessed against Equiniti and for whatever damages, attorney's fees and/or other relief is awarded to Plaintiffs, regardless of Plaintiffs' theory of recovery against Equiniti.

3. That the Court find that Fifth Third Bank breached its contractual obligations to Equiniti under the STAMP Medallion Signature Guarantee Program.

4. That Fifth Third Bank is obligated to fully indemnify Equiniti not only for any and all amounts that Equiniti is found to owe to Plaintiffs, but also for all amounts recoverable by Equiniti under the STAMP Medallion Signature Guarantee Program, including all of Equiniti's attorney's fees, litigation costs and other recoverable damages under the Medallion Signature Guarantee Program.

5. That the Court find that Fifth Third Bank is strictly liable to Equiniti under California Commercial Code section 8306 and related statutes, and that Fifth Third Bank is obligated to fully indemnify Equiniti not only for any and all amounts that Equiniti is found to owe to Plaintiffs, but also for all amounts expended by Equiniti in reliance on Fifth Third Bank's guaranteeing the signatures on the at-issue stock transfer forms under the Medallion Signature Guarantee Program, including all of Equiniti's attorney's fees, litigation costs and other recoverable damages incurred addressing the claims asserted by Plaintiffs, including the claims asserted by Plaintiffs in their Complaint.

6. For such other and further relief as this Court deems proper.

DATED: October ___, 2025

/s/ *Ben Suter*
BEN SUTER
PAULA ANDREA TRUCIOS
KEESAL, YOUNG & LOGAN
Attorneys for Defendant/Third-Party Plaintiff
EQUINITI TRUST COMPANY, LLC
erroneously named herein as EQUINITY TRUST
COMPANY

**EXHIBIT 1**

Paul H. Melbostad, Esq. SBN 99951
Vladislav P. Viltman, Esq. SBN 203140
g3mh, LLP
1388 Sutter Street, Suite 1000
San Francisco, CA 94109
T: (415) 673-5600 | F: (415) 673-5606
pmelbostad@g3mh.com
vviltman@g3mh.com

Attorneys for Plaintiffs FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, and NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**01/31/2025**
**Clerk of the Court**
**BY: SAHAR ENAYATI**
**Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022,

Plaintiffs,

v.

EQUINITY TRUST COMPANY, a New York limited liability company, FIFTH THIRD BANK, N.A., a national banking association, THE TRAVELERS COMPANIES, INC., a Minnesota corporation, JODY LON MILLARD, an individual, and DOEs 1-25, inclusive,

Defendants.

**Case No.:** **CGC-25-621996**

**COMPLAINT FOR:**

**(1) WRONGFUL REGISTRATION AND TRANSFER OF SECURITIES;**

**(2) DEFAULT UNDER MEDALLION GUARANTY INDEMNITY AGREEMENT; AND**

**(3) DEFAULT IN PAYMENT ON SURETY BOND**

Plaintiff FANI KOKKOROS, as Trustee of the Spilios Mousalimas Trust dated May 3, 1999, and NICK G. TARLSON, appointed by her as Special Trustee ("Plaintiffs") hereby allege against defendants EQUINITY TRUST COMPANY, a stock transfer agent, FIFTH THIRD BANK, N.A., issuer of the Medallion Guarantee of the signature and authority of defendant JODY LON MILLARD to act

as, or on behalf of, the Trustee of the Spilios Mousalimas Trust, THE TRAVELERS COMPANIES, INC., issuer of the bond to secure the Medallion Guarantee, and DOEs 1-25, (collectively, "defendants") as follows:

**PARTIES**

1. Plaintiff FANI KOKKOROS ("KOKKOROS" or "successor Trustee") is the current Trustee of the Spilios Mousalimas Trust dated May 3, 1999 (the "Trust"), nominated in the Trust by the Settlor/Trustor Spilios Mousalimas ("Spilios") to serve as successor Trustee when Spilios died or became no longer able to serve as Trustee.

2. Plaintiff NICK G. TARLSON, ("TARLSON" or "Special Trustee") is a Certified Public Accountant, who has been serving as the accountant and tax preparer for the Trustee of the Trust, and has been serving as a Special Trustee of the Spilios Mousalimas Trust after being appointed by Trustee KOKKOROS on July 12, 2022.

3. Defendant EQUINITY TRUST COMPANY ("EQUINITI"), a New York limited liability company, is a licensed stock transfer agent headquartered at 1110 Centre Pointe Curve, Suite 101, Mendota Heights, Minnesota 55120, phone number (800) 468-9716. The office of its Secretary, Executive Vice President, and Chief Compliance Officer, David Becker, is located at 48 Wall Street, 23rd Floor, New York, NY 10005. His email address is David.Becker@equiniti.com and his phone number is (347) 640-1017.

4. Defendant FIFTH THIRD BANK, N.A., ("FIFTH THIRD") is a national banking association headquartered in Cincinnati, Ohio, which participates in the Medallion Guarantee Program administered by Kemark Financial Services, Inc. A medallion signature guarantee is a special stamp that is used to transfer securities. It confirms that the signature authorizing the transfer is genuine and that the signer has the legal capacity and authority to sign the document. If a financial institution is not a member of a recognized Medallion Signature Guarantee Program, it would not be able to provide signature guarantees. If a signer is not a customer of the participating financial institution, it is unlikely the financial institution will guarantee the customer's signature. FIFTH THIRD issued the Medallion Guarantee of the signature and legal authority of defendant JODY LON MILLARD ("MILLARD") to act as, or on behalf of, the Trustee of the Spilios Mousalimas Trust. Accordingly, FIFTH THIRD is

obligated to indemnify EQUINITI and Trustee KOKKOROS as the true owner of legal title to the below-described stolen securities and dividend checks for the cancellation, reissuance and transfer of the securities and reissuance of dividend checks to MILLARD. This is based on MILLARD's false and fraudulent assertions that he was the beneficial owner, and/or rightful holder of legal title, and/or had authority to act as, or on behalf of, the Trustee of the Spilios Mousalimas Trust. MILLARD did not have such authority, and there was no reasonable basis to conclude that he was the owner and/or had such authority.

5. Defendant THE TRAVELERS COMPANIES, INC. ("TRAVELERS"), a Minnesota corporation, is an insurance company with its Investor Relations headquarters located at One Tower Square, Hartford, Connecticut. TRAVELERS issued the surety bond to insure performance by FIFTH THIRD of its obligation to indemnify EQUINITI and the Trustee as the true owner of legal title to the securities for the cancellation, reissuance and transfer of the securities and reissuance of dividend checks to MILLARD. This is based on his false and fraudulent assertions that he was the beneficial owner, and/or rightful holder of legal title, and/or had authority to act as, or on behalf of, the Trustee of the Spilios Mousalimas Trust, when he did not have such authority.

6. Defendant MILLARD is an individual who purports to reside in Aurora, Ohio, but Plaintiffs cannot be certain of his true name or place of residence. This defendant used the name "JODY LON MILLARD" to fraudulently execute a Stock Power Form—discussed *infra*—that enabled him to initiate and secure the transfer of PG&E and Southern Company common stock shares, along with corresponding dividend checks, which were titled in the name of the Trustee of the Spilios Mousalimas Trust. In doing so, MILLARD made false and fraudulent representations to EQUINITI and FIFTH THIRD, claiming that he was the beneficial owner of the shares, that the share certificates had been lost, and that he had authority to act on behalf of the Trustee of the Mousalimas Trust.

7. Plaintiffs do not know the true names of those defendants named as DOEs 1-25, inclusive, and therefore sue them by those fictitious names. Plaintiffs will seek leave of Court to amend this Complaint under Code of Civil Procedure §474 to state the true names, capacities, and relationships of said defendants if and when they are ascertained.

// // //

**JURISDICTION AND VENUE**

8. This Court is a court of general jurisdiction and therefore has subject matter jurisdiction over the claims asserted in this complaint.

9. The amount in controversy exceeds the jurisdictional minimum of this Court.

10. Venue is proper in the City and County of San Francisco because the Trust is being administered here in San Francisco, California at the offices of the attorney for the Trustee, g3mh, LLP, and the office of NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust.

**STATEMENT OF FACTS**

11. The allegations contained herein concern the wrongful registration and transfer by EQUINITI of securities and stock dividends with a value at the time of $1,992,035.01 to a person or persons who perpetuated a financial fraud against the Trustee of the Trust of decedent Spilios Mousalimas. The person or persons falsely claimed to be relatives and heirs of the decedent and provided a copy of a Trust instrument which had been altered to show that he was the successor Trustee appointed by Spilios Mousalimas, and the beneficiary entitled to distribution of the securities and dividends. The actual beneficiaries are two charities in Spilios' home country of Greece. Spilios had directed that his estate be distributed to the charities in equal shares.

12. Decedent created the Trust in 1999. The Trust directed that all the property in the Trust be distributed for the benefit of two cancer research and treatment facilities in Greece: the Cancer Research Department at the University of Athens and The Cancer Research Department of Panarcadia Evangelismos, the public hospital in Tripolis, the capital of Panarcadia, Spilios' home region of Greece.

**FIRST CAUSE OF ACTION**
**(Wrongful Registration and Transfer of Securities)**
**(Against EQUINITY TRUST COMPANY and Jody Lon Millard)**

13. Plaintiffs reallege and incorporate by reference all paragraphs previously asserted in this complaint.

14. The California Commercial Code Sections 8404 and 8407 assign liability to the Issuer of a Security, and, by extension, to the Transfer Agent, for the "wrongful registration of transfer if the Issuer has registered a transfer of a security to a person not entitled to it." As stated in a UNIFORM

COMMERCIAL CODE COMMENT cited in West's Ann.Cal.Com.Code Section 8407 as follows:

> 1. Transfer agents, registrars, and the like are here expressly held liable both to the issuer and to the owner for wrongful refusal to register a transfer as well as for wrongful registration of a transfer in any case within the scope of their respective functions where the issuer would itself be liable. Those cases which have regarded these parties solely as agents of the issuer and have therefore refused to recognize their liability to the owner for mere non-feasance, i.e., refusal to register a transfer, are rejected. *Hulse v. Consolidated Quicksilver Mining Corp.*, 65 Idaho 768, 154 P.2d 149 (1944); *Nicholson v. Morgan*, 119 Misc. 309, 196 N.Y.Supp. 147 (1922); *Lewis v. Hargadine-McKittrick Dry Goods Co.*, 305 Mo. 396, 274 S.W. 1041 (1924).

15. California Commercial Code Section 8404 titled **Wrongful Registration** provides:

> (a) Except as otherwise provided in Section 8406, an issuer is liable for wrongful registration of transfer if the issuer has registered a transfer of a security to a person not entitled to it, and the transfer was registered in any of the following circumstances:
>
> (1) Pursuant to an ineffective endorsement or instruction.
>
> (2) After a demand that the issuer not register transfer became effective under subdivision (a) of Section 8403(a) and the issuer did not comply with subdivision (b) of Section 8403.
>
> (3) After the issuer had been served with an injunction, restraining order, or other legal process enjoining it from registering the transfer, issued by a court of competent jurisdiction, and the issuer had a reasonable opportunity to act on the injunction, restraining order, or other legal process.
>
> (4) By an issuer acting in collusion with the wrongdoer.
>
> (b) An issuer that is liable for wrongful registration of transfer under subdivision (a) on demand shall provide the person entitled to the security with a like certificated or uncertificated security, and any payments or distributions that the person did not receive as a result of the wrongful registration. If an overissue would result, the issuer's liability to provide the person with a like security is governed by Section 8210. West's Ann.Cal.Com.Code Section 8404
>
> (c) Except as otherwise provided in subdivision (a) or in a law relating to the collection of taxes, an issuer is not liable to an owner or other person suffering loss as a result of the registration of a transfer of a security if registration was made pursuant to an effective endorsement or instruction.

16. Subsection (a)(1) provides that an issuer is liable if it registers transfer pursuant to an indorsement or instruction that was not effective. For example, an issuer that registers transfer on a forged indorsement is liable to the registered owner. The fact that the issuer had no reason to suspect that the indorsement was forged or that the issuer obtained the ordinary assurances under Section 8402 does not relieve the issuer from liability. The reason that issuers obtain signature guaranties and other assurances is that they are liable for wrongful registration. UNIFORM COMMERCIAL CODE COMMENT West's Ann.Cal.Com.Code § 8404 Wrongful Registration.

17. Pursuant to West's Ann.Cal.Com.Code § 8407 governing an authenticating trustee, transfer agent, and registrar, a person acting as authenticating trustee, transfer agent, registrar, or other agent for an issuer in the registration of a transfer of its securities, in the issue of new security certificates or uncertificated securities, or in the cancellation of surrendered security certificates has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions. Cal.Com.Code § 8407 (Added by Stats.1996, c. 497 (S.B.1591), § 9, operative Jan. 1, 1997.)

18. On November 2, 2021, MILLARD executed a Stock Power Form claiming that he had "lost" 12,300 shares of PG&E Corporation common stock (stock symbol "PCG"), then registered to the Spilios Mousalimas Trust. The form shows the Cost Basis box checked "Private Sale" requesting that the shares be Replaced in book entry form in a new "Individual" account in his name, not a "Trust" account. The Stock Power Form directs that the "Address for the New Account" be MILLARD's mailing address: PO Box 148, Aurora, OH 44202, and that the "Tax ID for the New Account" be the (likely false) Social Security Number 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. Millard's signature was guaranteed by a Medallion Signature Guarantee by defendant FIFTH THIRD (attached as **Exhibit A**). Millard was not entitled to become the owner of the shares—not in his individual capacity, nor as Trustee of the Mousalimas Trust. Accordingly, his submission of the Stock Power Form was fraudulent. The Form is incomplete and full of inconsistencies that should have been obvious and put EQUINITI on notice that it should not proceed with the transfer.

19. On January 13, 2022, MILLARD executed a Stock Power Form claiming that he had "lost the certificate for 17,700 shares" of PG&E Corporation common stock (stock symbol "PCG"), then registered to the Spilios Mousalimas Trust, with a Cost Basis box checked "Inheritance" requesting that the shares be placed in book entry form in a new "Individual" account in his name, not a "Trust" account. The Stock Power Form directs that the "Address for the New Account" be MILLARD's mailing address: PO Box 148, Aurora, OH 44202, and that the "Tax ID for the New Account" be the (likely false) Social Security Number 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. Millard's signature was guaranteed by a Medallion Signature Guarantee by defendant FIFTH THIRD (attached as **Exhibit B**). Millard was not entitled to become the owner of the shares—not in his individual capacity, nor as Trustee of the Mousalimas Trust. Accordingly, his

submission of the Stock Power Form was fraudulent. The Form is incomplete and full of inconsistencies that should have been obvious and put EQUINITI on notice that it should not proceed with the transfer.

20. On July 22, 2022, MILLARD executed a Stock Power Form requesting a transfer of "ALL" shares of Southern Company common stock, then registered to the Spilios Mousalimas Trust, with all blanks in the section on Cost Basis, and requesting that the shares be placed in book entry form in a "New Account" for a "Trust" in his name as "JODY LON MILLARD." The Stock Power Form directs that the "Address for the New Account" be MILLARD's mailing address: PO Box 148, Aurora, OH 44202 and the "Tax ID for the New Account" be a fraudulent EIN, 87-6512750. The Trust's actual EIN was applied for and obtained by Plaintiff TARLSON. MILLARD's signature and authority to act on behalf of the Trustee of the Trust was guaranteed by a Medallion Signature Guarantee by defendant FIFTH THIRD (attached as **Exhibit C**). MILLARD was not entitled to become the owner of the shares—not in his individual capacity, nor as Trustee of the Mousalimas Trust. Accordingly, his submission of the Stock Power Form was fraudulent. The Form is incomplete and full of inconsistencies that should have been obvious and put EQUINITI on notice that it should not proceed with the transfer.

21. In truth, none of the share certificates for common stock were ever lost, and there was no basis to transfer any of them as directed in the Stock Power Forms submitted by MILLARD. At all times when MILLARD was submitting the Forms requesting reissuance of the shares in MILLARD's name, the shares were in the custody of the rightful Trustee and owner of legal title to the share certificates, plaintiff Fani KOKKOROS. Copies of the share certificates are attached hereto as **Exhibit D**.

22. In addition to obtaining the shares from EQUINITI, MILLARD obtained a check from **Southern Company** for $48,735.01. The check was payable to the Trust but was mailed to MILLARD's address: PO Box 148 Aurora, OH 44202-0148. MILLARD deposited the check into EQUINITI's Wells Fargo Account No. 6711363231. See check image, attached hereto as **Exhibit E**.

23. The total value of the stock and cash dividends taken by MILLARD by presenting fraudulent documents to EQUINITI is as follows:

// // //

// // //

// // //

| Description | Shares | Share Price as of 01/01/2024 | Value |
|---|---|---|---|
| PG&E Corporation | 12,300 | $18.03 | $221,769.00 |
| PG&E Corporation | 17,700 | $18.03 | $319,131.00 |
| Southern Company | 20,000 | $70.12 | 1,402,400.00 |
| Southern Company | Check | | $48,735.01 |
| | | Total: | **$1,992,035.01** |

24. The property was wrongfully transferred to MILLARD and/or DOEs 1-25 by EQUINITI. On August 18, 2022, Paul Melbostad, as attorney for Trustee KOKKOROS, notified EQUINITI that the Trustee of the Trust was entitled to the property in question. On August 24, 2022, EQUINITI asked Trustee KOKKOROS, through TARLSON, to provide a "Certificate of Fiduciary Authority" and an authorization letter. On October 4, 2022, EQUINITI informed KOKKOROS, through TARLSON, that the shares had been transferred to a third party, pursuant to Medallion Guarantee stamped Stock Powers. On October 14, 2022, at EQUINITI's request, TARLSON provided "Letters of Instruction" explaining the fraudulent activity and asked for assistance in making a claim for recovery of the property. On October 17, 2022, EQUINITI asked TARLSON to prepare "Affidavits of Loss" for the property. On November 22, 2022, TARLSON sent the "Affidavits of Loss" by facsimile and by overnight delivery.

25. On January 3, 2023, based on the receipt of the November 22, 2022 fax, EQUINITI corresponded with TARLSON indicating that it had not received the original documents, and insisting that TARLSON send the original documents, which he had already done on November 22, 2022 by overnight delivery. On January 5, 2023, TARLSON provided EQUINITI with the documentation showing that the documents had been delivered. The same day, David Becker, EQUINITI's Compliance Officer, responded, "I have forwarded this email to the people working on this, and I'll let you know where this stands."

26. TARLSON followed up with Mr. Becker with additional email correspondence on January 17, 2023, January 19, 2023, and March 8, 2023, in addition to numerous attempts to contact him by telephone. On March 9, 2023, Becker responded:

> "As you know, we previously made a claim to the bank that issued the Medallion Guarantee for the transaction. As of this date, we have not heard back from them, and are escalating this matter to the administrator of the Medallion Signature Guarantee program. The affidavits of check fraud that you sent us have been submitted to the receiving bank along with a claim by our paying bank, Wells Fargo, and we are waiting for a response from them."

27. On April 21, 2023, TARLSON asked Becker for an update. On May 16, 2023 he responded, "Our bank, Wells Fargo, continues to attempt to obtain the funds back from the receiving bank, but has not received anything back yet. We are continuing to push to try and recover the funds."

28. The same day, TARLSON asked about the stock transfers. On May 19, 2023, Becker responded, "This has been escalated to the administrator of the Medallion program, and we are waiting to hear back from them."

29. On June 8, 2023, TARLSON followed up with Becker. He responded,

> With respect to the Medallion program, the program people are working with the entity that put the Medallion on the document, and we are waiting to hear from them. As for Wells Fargo's claim, it is in process, but these things can take a number of months to get resolved.

TARLSON, and also Paul H. Melbostad, the attorney for KOKKOROS in administering the Trust, continued to inquire about the progress of this matter through December 13, 2023 and throughout 2024, but it was never resolved despite Becker's assurances, and Becker never provided a copy of any of the documents he asserted that EQUINITI had prepared and submitted to recover the shares and dividend payments, despite numerous and repeated requests by Melbostad in live phone conversations, voicemails, and emails which document the requests. It may be inferred that EQUINITI never actually performed any of the actions it represented that it had taken.

30. If it is determined that there is a loss and that the loss resulted from the wrongful transfer of securities pursuant to a forged or otherwise ineffective endorsement, a *"demand for indemnity" under the Medallion Program Indemnity Agreement should be made by the Transfer Agent upon the Guarantor.* The Transfer Agent should provide the Guarantor with all documentation related to the item in question, including copies of the endorsement, the Medallion imprint, and the Affidavit of Forgery. It may be inferred that no such "demand for indemnity" under the Medallion Program Indemnity Agreement was made by EQUINITI as the Transfer Agent upon the Guarantor, FIFTH THIRD—despite repeated requests by Plaintiffs' attorney to David Becker for copies, no copy of any demand for

indemnity from FIFTH THIRD has ever been provided by EQUINITI.

31. Under the terms of the Medallion Program's Application and Subscription Agreement, the Guarantor**,** FIFTH THIRD, must acknowledge receipt of the demand in writing within three business days. Also, under the terms of the Medallion Program's Application and Subscription Agreement, the Guarantor's "failure to satisfy a demand within ten (l0) business days after receipt" will constitute a default under the Indemnity Agreement, entitling the Transfer Agent to present the demand as a claim under the Guarantor's Medallion Program Surety Bond. Apparently, FIFTH THIRD failed to do so; because despite repeated requests by Plaintiffs' attorney for copies, none has ever been provided. If Guarantor Surety Bond information is needed, the Transfer Agent is required to be able to secure this information via a written request made to the Medallion Program Administrator. The Transfer Agent should maintain a dialogue with the Investor and the Guarantor or its Surety Company until settlement or resolution. EQUINITI has not done so.

32. The incidents and circumstances giving rise to claims vary; but both Guarantors and Transfer Agents have a mutual obligation to the Investor to resolve issues efficiently and expeditiously. Neither EQUINITI nor FIFTH THIRD has done so, which allowed MILLARD to succeed in having the shares he claimed were lost, replaced, and wrongfully transferred and registered to him. As a direct, foreseeable and consequential result, Plaintiffs have suffered damages in an amount of at least the value of the shares and dividends taken $1,992,035.01, plus the attorney fees and legal costs Plaintiffs have been forced to incur to recover their property, which Plaintiffs are entitled to recover as damages, in an amount to be determined, according to proof.

WHEREFORE, Plaintiffs pray for judgment against defendants EQUINITI and MILLARD, as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(Default Under Medallion Guaranty Indemnity Agreement)**
**(Against Fifth Third Bank, N.A.)**

33. Plaintiffs reallege and incorporate by reference all of the allegations asserted in the previous paragraphs to the extent relevant to this second cause of action.

34. Under the terms of the Medallion Program's Application and Subscription Agreement,

the Guarantor's "failure to satisfy a demand within ten (l0) business days after receipt" will constitute a default under the Indemnity Agreement, entitling the Transfer Agent to present the demand as a claim under the Guarantor's Medallion Program Surety Bond. The Guarantor should deal with the demand for indemnity under its Indemnity Agreement according to predetermined internal procedures, which will likely involve legal and risk management resources and, possibly, other financial institution insurance. Both Guarantors and Transfer Agents have a mutual obligation to the Investor to resolve issues efficiently and expeditiously.

35. Plaintiffs are informed and believe that if EQUINITI made a demand on FIFTH THIRD for indemnity, FIFTH THIRD failed to satisfy the demand within ten (l0) business days after receipt, and failed to ever satisfy the demand, so FIFTH THIRD defaulted under the Indemnity Agreement, entitling EQUINITI as the Transfer Agent to present the demand as a claim under the Guarantor's Medallion Program Surety Bond.

36. As a direct, foreseeable and consequential result, Plaintiffs have suffered damages in an amount of at least the value of the shares and dividends taken $1,992,035.01, plus the attorney fees and legal costs Plaintiffs have been forced to incur to enforce the Indemnity Agreement, of which Plaintiffs are a third party beneficiary, which Plaintiffs are entitled to recover as damages, in an amount to be determined, according to proof.

WHEREFORE, Plaintiffs pray for judgment against FIFTH THIRD, as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(Failure to Indemnify by Issuer of Surety Bond)**
**(Against THE TRAVELERS COMPANIES, INC. Company)**

37. Plaintiffs reallege and incorporate by reference all of the allegations asserted in the previous paragraphs to the extent they are relevant to this third cause of action.

38. TRAVELERS issued a surety bond to ensure indemnity by FIFTH THIRD on its Medallion Guarantee of the authenticity of the signatures of MILLARD and the authority of MILLARD to act as, or on behalf of the Trustee of the Spilios Mousalimas Trust, on the Stock Powers. TRAVELERS is thus obligated to compensate EQUINITI if FIFTH THIRD failed to fulfill its guarantee of a signature's authenticity and the authority of the signatory. In essence, the insurance company that

issues a surety bond acts as a backstop, to ensure that the financial institution, in this case a Transfer Agent, is protected in case the Medallion Guarantor makes an error or fails to meet its guarantee obligations.

39. As a direct, foreseeable and consequential result, Plaintiffs have suffered damages in an amount of at least the value of the shares and dividends taken $1,992,035.01, plus the attorney fees and legal costs Plaintiffs have been forced to incur to enforce the Indemnity Agreement, of which Plaintiffs are a third party beneficiary, which Plaintiffs are entitled to recover as damages, in an amount to be determined, according to proof.

WHEREFORE, Plaintiffs pray for judgment against TRAVELERS, as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants as follows:

1. Against EQUINITI for actual damages in the amount of the value of the wrongfully taken shares of securities and dividend checks of $1,992,035.01;

2. Against FIFTH THIRD for actual damages in the amount of the value of the wrongfully taken shares of securities and dividend checks of $1,992,035.01 for which it was obligated to indemnify EQUINITI;

3. Against TRAVELERS for actual damages in the amount of the value of the wrongfully taken shares of securities and dividend checks of $1,992,035.01 for which it was obligated to indemnity EQUINITI if FIFTH THIRD failed to meet its guarantee obligations;

4. For the attorney fees and legal costs Plaintiffs were forced to incur to recover their property, which fees and costs constitute damages, because the fees were necessarily incurred to recover property which already belonged to them which was wrongfully taken or transferred by the defendants;

5. For other reasonably foreseeable damages suffered by the Trustee and the beneficiaries of the Trust as a result of the wrongful taking, wrongful transfer and/or wrongful registration of the shares of common stock and wrongful taking and reissuance to defendants of dividend checks by fraudulent misrepresentation and concealment and other tortious actions by defendants;

6. For exemplary and punitive damages against defendants MILLARD and EQUINITI and DOEs 1-25 for the wrongful taking and/or wrongful transfer, and/or wrongful registration of property

of the Trustees and Trust beneficiaries with the intention to injure Defendants and/or with reckless disregard for their rights and safety;

7. For Prejudgment and postjudgment interest at the legal rate accrued from the dates that the securities were wrongfully taken, transferred and/or registered, subject to proof;

8. For such other and further relief as the Court deems just and proper.

Dated: January 31, 2025

Respectfully Submitted,
g3mh, LLP dba Goldstein, Gellman, Melbostad & Harris

Paul H. Melbostad, Esq.
Vladislav P. Viltman, Esq.
Attorneys for Attorneys for Plaintiffs FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, and NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022

# EXHIBIT A

320 112415

# Stock Power Form For transferring shares, changing names, or adding a beneficiary

**Please print clearly. Alterations, corrections, or white-out will render the Stock Power Form invalid.**

## A. Tell Us About: The account you are transferring from Use a new form for each account and company of stock you are transferring.

1. Account Number: 3600359319

2. Company of stock to be transferred: PCG

3. Current Registration: SPILIOS MOUSALIMAS TR UA 05 03 99 BY SPILIOS MOUSALIMAS

Please print the full registration/names/ownership title as it reads on statements, certificates and tax forms.

## B. Tell Us About: The shares you would like to transfer

4. ☒ Transfer **ALL** shares (If checked, leave boxes 5, 6, and 7 blank.)*

If you are not transferring all shares, enter the specific number of shares to transfer from each share type:

5. Direct Registration: ______ 6. Plan: ______ 7. Certificates:* ______

*The original certificates must be included with your request. If they are lost, please write the number of lost shares or write **ALL** in box 8.

8. I lost the certificate(s) for 12300 shares and require assistance replacing them.

There is a $75 processing fee to replace lost certificates. There may be additional fees and documents required, see FAQs.

## C. Tell Us About: Cost Basis

☒ Private Sale Date of Sale: ______ Cost Per Share in US Dollars: ______

☐ Gift

☐ Inheritance Date of Death: 03/26/06 Fair Market Value Per Share in US Dollars: ______

For shares jointly held: Enter the number of shares in which the decedent had an interest: ______

## D. Please Let Us Know: If you would like uncashed checks to be reissued (if applicable)

9. Reissue checks into (choose one): ☒ New Owner's Name **OR** ☐ Current Name on Account

When transferring to multiple accounts, the new replacement checks will be issued to the current name on the account. A stop payment will be placed on all uncashed checks prior to their replacement. Checks issued within the last 10 days will not be replaced.

## E. Medallion Signature Guarantee

All current owners or authorized individual(s) must sign their name and have the signature guaranteed by a member of a Medallion Stamp Program. An authorized individual must write their capacity (title) in the space below. The Medallion Guarantor may require additional documentation. The undersigned does (do) irrevocably constitute and appoint Equiniti Trust Company attorney to transfer the said stock on the books of said Company with full power of substitution in the premises. Medallion Signature Guarantees can be obtained from financial institutions, including commercial banks, brokers, and credit unions. *(See the FAQ Medallion Signature Guarantee for more information)*

Signature of all registered owners or legal representatives

X [signature]

X______

Title of Legal Representatives, if applicable:

X______

VERIFIED

STAMP EQSS NOV 03 2021 EQSS Notation

Note to Guarantor: Medallion Stamp must be fully legible and must **NOT** be dated or annotated.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
FIFTH THIRD BANK, N.A.
[signature]
AUTHORIZED SIGNATURE
(1093) X9014922
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM℠



SP SOnL 12/18
DOM V5.3

320 1112416

**Alterations, corrections, or white-out will render the Stock Power Form invalid.**

## F. Tell Us About: The account you want the shares transferred to
A separate page is needed for each new account

Enter the number of shares to transfer into the account indicated on this page. When transferring to multiple accounts, you must submit a separate copy of this page and indicate the number of shares to transfer into each new account. [ ]

If you are transferring to an existing Shareowner Services account, enter the 10-digit account number, and complete Line 1 with the full account registration. Then, skip to Section **H**. [ ]

**Registration for the New Account** check only one box below, complete the indicated lines, new address, and Tax ID

- [■] Individual – Line 1
- [ ] Joint Tenancy – Lines 1 and 2a
- [ ] Tenants in Common – Lines 1 and 2a
- [ ] Estate – Lines 1 and 4a
- [ ] Trust – Lines 1, 4a, and 4b
- [ ] Tenants by Entirety – Lines 1 and 2a
- [ ] Custodian for Minor – Lines 1, 2a, and 2b
- [ ] TOD Beneficiary – Lines 1 and 4a
- [ ] Corporation – Line 1
- [ ] LLC C Corporation – Line 1
- [ ] LLC S Corporation – Line 1
- [ ] LLC Partnership – Line 1
- [ ] Other – Line 1 and enter type of registration: ____________

Line 1. New Owner/Custodian/Trustee/Executor/Other (First Name, Middle Initial, Last Name)

JODY MILLARD

Line 2a. Joint Owner/Minor/Second Trustee/Other (First Name, Middle Initial, Last Name)

2b. Minor's State of Residence

Line 3. Any additional Joint Owners/Trustees/Other (First Name, Middle Initial, Last Name)

Line 4a. Name of Trust/Estate/TOD Beneficiary

4b. Date of Trust (MM/DD/YY)

**Address for the New Account** Including City, State, and Zip Code

PO Box 148 AURORA, OH. 44202

**Tax ID for the New Account**
Enter the Social Security Number **OR** Employer Identification Number (then check one box to identify type)

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 [■] SSN **OR** [ ] EIN

## G. Substitute Form W-9
The New Owner signature below **MUST** correspond to the Tax ID for the New Account above

Certification: Under penalties of perjury, I certify that: **1.** The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and **2.** I am not subject to backup withholding because: (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and **3.** I am a U.S. citizen or other U.S. person (defined in the instructions). **4.** The FATCA code entered on this form (if any) indicating that the payee is exempt from FATCA reporting is correct. (This does not apply to accounts located in the U.S.)

Exempt Payee Code (if any):________ (Codes are available with the official IRS Form W-9 available at www.irs.gov)

Exemption from FATCA Reporting Code (if any): NOT APPLICABLE (codes are available with the official IRS Form W-9 available at www.irs.gov)

Certification instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

Signature: [signature] Date: 11/2/21 (Rev. 10/18)

**NOTICE TO NON-U.S. PERSONS** (e.g. nonresident aliens individuals, foreign corporations, foreign partnerships or foreign trusts): DO NOT COMPLETE THE ABOVE SUBSTITUTE FORM W-9. NON-U.S. PERSONS MUST PROPERLY AND TIMELY COMPLETE AND RETURN THE APPLICABLE FORM W-8, (AVAILABLE AT www.irs.gov) AND RETURN THAT CERTIFICATION OF FOREIGN TAX STATUS. FAILURE TO DO SO COULD SUBJECT YOU TO EITHER U.S. FEDERAL BACKUP WITHHOLDING TAX AT THE APPLICABLE RATE OR FATCA/NRA WITHHOLDING OF 30%, AS APPLICABLE, OF THE REPORTABLE/WITHHOLDABLE AMOUNT.

## H. Sign up for Online Access: If the new owner would like to receive instructions for online access

[■] Check the box to the left to send instructions for online access. An Authentication ID and sign up instructions will be mailed to the address in Section F. Some restrictions may apply. Online account access is not available for accounts registered in the name of a Corporation, Partnership, Investment Club, Bank, or Brokerage firm where multiple individuals are authorized to perform transactions.

# EXHIBIT B

# Stock Power Form For transferring shares, changing names, or adding a beneficiary

**Please print clearly. Alterations, corrections, or white-out will render the Stock Power Form invalid.**

## A. Tell Us About: The account you are transferring from Use a new form for each account and company of stock you are transferring.

1. Account Number: 3600359320

2. Company of stock to be transferred: PCG

3. Current Registration: SPILIOS MOUSALIMAS TR SPILIOS MOUSALIMASTRUST UA MAY 3 99

Please print the full registration/names/ownership title as it reads on statements, certificates and tax forms.

## B. Tell Us About: The shares you would like to transfer

4. ☒ Transfer **ALL** shares (If checked, leave boxes 5, 6, and 7 blank.)*

If you are not transferring all shares, enter the specific number of shares to transfer from each share type:

5. Direct Registration: ______ 6. Plan: ______ 7. Certificates:* ______

*The original certificates must be included with your request. If they are lost, please write the number of lost shares or write **ALL** in box 8.

8. I lost the certificate(s) for 17700 shares and require assistance replacing them.

There is a $75 processing fee to replace lost certificates. There may be additional fees and documents required, see FAQs.

## C. Tell Us About: Cost Basis

☐ Private Sale Date of Sale: ______ Cost Per Share in US Dollars: ______

☐ Gift

☒ Inheritance Date of Death: 03/26/06 Fair Market Value Per Share in US Dollars: ______

For shares jointly held: Enter the number of shares in which the decedent had an interest: ______

## D. Please Let Us Know: If you would like uncashed checks to be reissued (if applicable)

9. Reissue checks into (choose one): ☒ New Owner's Name **OR** ☐ Current Name on Account

When transferring to multiple accounts, the new replacement checks will be issued to the current name on the account. A stop payment will be placed on all uncashed checks prior to their replacement. Checks issued within the last 10 days will not be replaced.

## E. Medallion Signature Guarantee

All current owners or authorized individual(s) must sign their name and have the signature guaranteed by a member of a Medallion Stamp Program. An authorized individual must write their capacity (title) in the space below. The Medallion Guarantor may require additional documentation. The undersigned does (do) irrevocably constitute and appoint Equiniti Trust Company attorney to transfer the said stock on the books of said Company with full power of substitution in the premises. Medallion Signature Guarantees can be obtained from financial institutions, including commercial banks, brokers, and credit unions. *(See the FAQ Medallion Signature Guarantee for more information)*

Signature of all registered owners or legal representatives

X [signature]

X ______

Title of Legal Representatives, if applicable:

X [initials] VERIFIED

Note to Guarantor: Medallion Stamp must be fully legible and must **NOT** be dated or annotated.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
FIFTH THIRD BANK, N.A.
[signature]
AUTHORIZED SIGNATURE
(1093) X9014922
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

STAMP 2000 JAN 13 2022 EQSS Notation

VERIFIED STAMP 2000 NOV 23 2021 EQSS Not...

VERIFIED STAMP 2000 FEB 15 2022 EQSS Notation

**Alterations, corrections, or white-out will render the Stock Power Form invalid.**

## F. Tell Us About: The account you want the shares transferred to A separate page is needed for each new account

Enter the number of shares to transfer into the account indicated on this page. When transferring to multiple accounts, you must submit a separate copy of this page and indicate the number of shares to transfer into each new account. [ ]

If you are transferring to an existing Shareowner Services account, enter the 10-digit account number, and complete Line 1 with the full account registration. Then, skip to Section **H.** [ ]

**Registration for the New Account** check only one box below, complete the indicated lines, new address, and Tax ID

- [x] Individual – Line 1
- [ ] Joint Tenancy – Lines 1 and 2a
- [ ] Tenants in Common – Lines 1 and 2a
- [ ] Estate – Lines 1 and 4a
- [ ] Trust – Lines 1, 4a, and 4b
- [ ] Tenants by Entirety – Lines 1 and 2a
- [ ] Custodian for Minor – Lines 1, 2a, and 2b
- [ ] TOD Beneficiary – Lines 1 and 4a
- [ ] Corporation – Line 1
- [ ] LLC C Corporation – Line 1
- [ ] LLC S Corporation – Line 1
- [ ] LLC Partnership – Line 1
- [ ] Other – Line 1 and enter type of registration: ______________________

Line 1. New Owner/Custodian/Trustee/Executor/Other (First Name, Middle Initial, Last Name)

JODY MILLARD

Line 2a. Joint Owner/Minor/Second Trustee/Other (First Name, Middle Initial, Last Name) 2b. Minor's State of Residence

Line 3. Any additional Joint Owners/Trustees/Other (First Name, Middle Initial, Last Name)

Line 4a. Name of Trust/Estate/TOD Beneficiary 4b. Date of Trust (MM/DD/YY)

**Address for the New Account** Including City, State, and Zip Code

PO BOX 148 AURORA, OH. 44202

**Tax ID for the New Account**
Enter the Social Security Number **OR** Employer Identification Number (then check one box to identify type)

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 [ ] SSN **OR** [ ] EIN

## G. Substitute Form W-9 The New Owner signature below MUST correspond to the Tax ID for the New Account above

Certification: Under penalties of perjury, I certify that: 1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and 3. I am a U.S. citizen or other U.S. person (defined in the instructions). 4. The FATCA code entered on this form (if any) indicating that the payee is exempt from FATCA reporting is correct. (This does not apply to accounts located in the U.S.)

Exempt Payee Code (if any):__________ (Codes are available with the official IRS Form W-9 available at www.irs.gov)

Exemption from FATCA Reporting Code (if any): NOT APPLICABLE (codes are available with the official IRS Form W-9 available at www.irs.gov)

Certification instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

Signature: [signature] Date: 11/22/21 (Rev. 10/18)

**NOTICE TO NON-U.S. PERSONS** (e.g. nonresident aliens individuals, foreign corporations, foreign partnerships or foreign trusts): DO NOT COMPLETE THE ABOVE SUBSTITUTE FORM W-9. NON-U.S. PERSONS MUST PROPERLY AND TIMELY COMPLETE AND RETURN THE APPLICABLE FORM W-8, (AVAILABLE AT www.irs.gov) AND RETURN THAT CERTIFICATION OF FOREIGN TAX STATUS. FAILURE TO DO SO COULD SUBJECT YOU TO EITHER U.S. FEDERAL BACKUP WITHHOLDING TAX AT THE APPLICABLE RATE OR FATCA/NRA WITHHOLDING OF 30%, AS APPLICABLE, OF THE REPORTABLE/WITHHOLDABLE AMOUNT.

## H. Sign up for Online Access: If the new owner would like to receive instructions for online access

- [ ] Check the box to the left to send instructions for online access. An Authentication ID and sign up instructions will be mailed to the address in Section F. Some restrictions may apply. Online account access is not available for accounts registered in the name of a Corporation, Partnership, Investment Club, Bank, or Brokerage firm where multiple individuals are authorized to perform transactions.

# EXHIBIT C

30_2882571

# Stock Power Form For transferring shares, changing names, or adding a beneficiary

**Please print clearly. Alterations, corrections, or white-out will render the Stock Power Form invalid.**

## A. Tell Us About: The account you are transferring from
Use a new form for each account and company of stock you are transferring.

1. Account Number: **3602492854**

2. Company of stock to be transferred: SOUTHERN COMPANY

3. Current Registration: SPILIOS MOUSALIMAS TR SPILIOS MOUSALIMAS TRUST 5/3/99

Please print the full registration/names/ownership title as it reads on statements, certificates and tax forms.

## B. Tell Us About: The shares you would like to transfer

4. ☒ Transfer **ALL** shares (If checked, leave boxes 5, 6, and 7 blank.)*

If you are not transferring all shares, enter the specific number of shares to transfer from each share type:

5. Direct Registration: ____ 6. Plan: ____ 7. Certificates:* ____

*The original certificates must be included with your request. If they are lost, please write the number of lost shares or write **ALL** in box 8.

8. I lost the certificate(s) for ____ shares and require assistance replacing them.

There is a $75 processing fee to replace each certificate that is lost. There may be additional fees and documents required, see FAQs.

## C. Tell Us About: Cost Basis

☐ Private Sale Date of Sale: ____________ Cost Per Share in US Dollars: ____________

☐ Gift

☐ Inheritance Date of Death: ____________ Fair Market Value Per Share in US Dollars: ____________

For shares jointly held: Enter the number of shares in which the decedent had an interest: ____________

## D. Please Let Us Know: If you would like uncashed checks to be reissued (if applicable)

9. Reissue checks into (choose one): ☐ New Owner's Name **OR** ☐ Current Name on Account

When transferring to multiple accounts, the new replacement checks will be issued to the current name on the account. A stop payment will be placed on all uncashed checks prior to their replacement. Checks issued within the last 10 days will not be replaced.

## E. Medallion Signature Guarantee

All current owners or authorized individual(s) must sign their name and have the signature guaranteed by a member of a Medallion Stamp Program. An authorized individual must write their capacity (title) in the space below. The Medallion Guarantor may require additional documentation. The undersigned does (do) irrevocably constitute and appoint Equiniti Trust Company attorney to transfer the said stock on the books of said Company with full power of substitution in the premises. Medallion Signature Guarantees can be obtained from financial institutions, including commercial banks, brokers, and credit unions. *(See the FAQ Medallion Signature Guarantee for more information)*

Signature of all registered owners or legal representatives

X [signature]

X____________________

Title of Legal Representatives, if applicable:

X____________________

Note to Guarantor: Medallion Stamp must be fully legible and must **NOT** be dated or annotated.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
FIFTH THIRD BANK, N.A.
[signature]
AUTHORIZED SIGNATURE
(1093) X9014922
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

VERIFIED
JUL 25 2022
EQSS Notation

**Page 1 of 2**

SP SOnL 06/22

Exhibit 27

30[?]2882572

**Alterations, corrections, or white-out will render the Stock Power Form invalid.**

**F. Tell Us About: The account you want the shares transferred to** A separate page is needed for each new account

Enter the number of shares to transfer into the account indicated on this page. When transferring to multiple accounts, you must submit a separate copy of this page and indicate the number of shares to transfer into each new account.

If you are transferring to an existing Shareowner Services account, enter the 10-digit account number, and complete Line 1 with the full account registration. Then, skip to Section H.

**Registration for the New Account** check only one box below, complete the indicated lines, new address, and Tax ID

- [ ] Individual – Line 1
- [ ] Joint Tenancy – Lines 1 and 2a
- [ ] Tenants in Common – Lines 1 and 2a
- [ ] Estate – Lines 1 and 4a
- [x] Trust – Lines 1, 4a, and 4b
- [ ] Tenants by Entirety – Lines 1 and 2a
- [ ] Custodian for Minor – Lines 1, 2a, and 2b
- [ ] TOD Beneficiary – Lines 1 and 4a
- [ ] Corporation – Line 1
- [ ] LLC C Corporation – Line 1
- [ ] LLC S Corporation – Line 1
- [ ] LLC Partnership – Line 1
- [ ] Other – Line 1 and enter type of registration: ______

Line 1. New Owner/Custodian/Trustee/Executor/Other (First Name, Middle Initial, Last Name)

JODY LON MILLARD

Line 2a. Joint Owner/Minor/Second Trustee/Other (First Name, Middle Initial, Last Name)

2b. Minor's State of Residence

Line 3. Any additional Joint Owners/Trustees/Other (First Name, Middle Initial, Last Name)

Line 4a. Name of Trust/Estate/TOD Beneficiary

SPILIOS MOUSALIMAS TR UA 05 03 99

4b. Date of Trust (MM/DD/YY)

05/03/99

**Address for the New Account** Including City, State, and Zip Code

PO BOX 148 AURORA, OH. 44202

**Tax ID for the New Account**

Enter the Social Security Number **OR** Employer Identification Number (then check one box to identify type)

876512750 [ ] SSN **OR** [x] EIN

**G. Substitute Form W-9** The New Owner signature below **MUST** correspond to the Tax ID for the New Account above

Certification: Under penalties of perjury, I certify that: **1.** The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and **2.** I am not subject to backup withholding because: (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and **3.** I am a U.S. citizen or other U.S. person (defined in the instructions). **4.** The FATCA code entered on this form (if any) indicating that the payee is exempt from FATCA reporting is correct. (This does not apply to accounts located in the U.S.)

Exempt Payee Code (if any):__________ (Codes are available with the official IRS Form W-9 available at www.irs.gov)

Exemption from FATCA Reporting Code (if any): NOT APPLICABLE (codes are available with the official IRS Form W-9 available at www.irs.gov)

Certification instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

Signature: [signature] Date: 7/22/2022 (Rev. 10/18)

**NOTICE TO NON-U.S. PERSONS** (e.g. nonresident aliens individuals, foreign corporations, foreign partnerships or foreign trusts): DO NOT COMPLETE THE ABOVE SUBSTITUTE FORM W-9. NON-U.S. PERSONS MUST PROPERLY AND TIMELY COMPLETE AND RETURN THE APPLICABLE FORM W-8, (AVAILABLE AT www.irs.gov) AND RETURN THAT CERTIFICATION OF FOREIGN TAX STATUS. FAILURE TO DO SO COULD SUBJECT YOU TO EITHER U.S. FEDERAL BACKUP WITHHOLDING TAX AT THE APPLICABLE RATE OR FATCA/NRA WITHHOLDING OF 30%, AS APPLICABLE, OF THE REPORTABLE/WITHHOLDABLE AMOUNT.

**H. Sign up for Online Access: If the new owner would like to receive instructions for online access**

- [x] Check the box to the left to send instructions for online access. An Authentication ID and sign up instructions will be mailed to the address in Section F. Some restrictions may apply. Online account access is not available for accounts registered in the name of a Corporation, Partnership, Investment Club, Bank, or Brokerage firm where multiple individuals are authorized to perform transactions.

# EXHIBIT D

Exhibit 28

5198 U43070039559OF9 28070599

NUMBER
PCG44932

**COMMON STOCK**

NO PAR VALUE

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

THIS CERTIFICATE IS TRANSFERABLE IN NEW YORK, NY OR RIDGEFIELD PARK, NJ.

**COMMON STOCK**

NO PAR VALUE

SEE REVERSE FOR CERTAIN DEFINITIONS AND TERMS

CUSIP 69331C 10 8

# PG&E Corporation

THIS CERTIFIES THAT

PCG 044932 SPILIOS MOUSALIMAS TR ***12300***
1105 UA 05 03 99
[illegible] BY SPILIOS MOUSALIMAS
MOUSALIMA
SPIL-0100
5198 OMA
043070039

IS THE RECORD HOLDER OF

*[illegible] THREE HUNDRED***

FULLY PAID NON-ASSESSABLE SHARES OF THE COMMON STOCK OF

*PG&E Corporation, transferable upon its books on surrender of this certificate properly endorsed. This certificate and the shares represented hereby are issued and shall be held subject to all the provisions of the Articles of Incorporation of the Corporation and amendments thereto, to all of which the holder by the acceptance hereof assents. This certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness the seal of the Corporation and the signatures of its duly authorized officers.*

DATED: 11/05/04

PG&E CORPORATION INCORPORATED NOVEMBER 17, 1995 CALIFORNIA

CORPORATE SECRETARY

CHAIRMAN OF THE BOARD

COUNTERSIGNED AND REGISTERED:
Mellon Investor Services LLC
TRANSFER AGENT AND REGISTRAR

BY

AUTHORIZED OFFICER

Exhibit 23

NUMBER

ZQ 42321

**COMMON STOCK**

NO PAR VALUE

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

THIS CERTIFICATE IS TRANSFERABLE IN SAN FRANCISCO OR NEW YORK, NY



**COMMON STOCK**

NO PAR VALUE

SEE REVERSE FOR CERTAIN DEFINITIONS AND TERMS

# PG&E Corporation

THIS CERTIFIES THAT

CUSIP 69331C 10 8

SPILIOS MOUSALIMAS TR SPILIOS MOUSALIMAS TRUST UA MAY 3 99

****17700********

IS THE RECORD HOLDER OF

**SEVENTEEN THOUSAND SEVEN HUNDRED**

FULLY PAID NON-ASSESSABLE SHARES OF THE COMMON STOCK OF

*PG&E Corporation, transferable upon its books on surrender of this certificate properly endorsed. This certificate and the shares represented hereby are issued and shall be held subject to all the provisions of the Articles of Incorporation of the Corporation and amendments thereto, to all of which the holder by the acceptance hereof assents. This certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness the seal of the Corporation and the signatures of its duly authorized officers.*

CERTIFICATE OF STOCK

DATED: MAY 10, 1999

Stanley T. Skinner
CHAIRMAN OF THE BOARD

Leslie H. Everett
CORPORATE SECRETARY

COUNTERSIGNED:
PG&E CORPORATION
(SAN FRANCISCO)
BY David M. Kelly
TRANSFER AGENT

REGISTERED:
BNY Western Trust Company
REGISTRAR
BY
AUTHORIZED OFFICER.

PG&E CORPORATION INCORPORATED NOVEMBER 17 1995 CALIFORNIA

033831

Exhibit 28

NUMBER SC1443401

COMMON STOCK
PAR VALUE $5.00 EACH



SHARES *****20000*****

COMMON STOCK
PAR VALUE $5.00 EACH
CUSIP 842587 10

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFICATE IS TRANSFERABLE EITHER IN ATLANTA, GEORGIA —OR— NEW YORK, N.Y.

# THE SOUTHERN COMPANY

INCORPORATED UNDER THE —LAWS— OF THE STATE —OF— DELAWARE

This Certifies that 000134441

SPILIOS MOUSALIMAS TTEE
SPILIOS MOUSALIMAS TRUST DTD 05/03/99
1070 SIERRA VISTA WAY
LAFAYETTE CA 94549-3127

***20000********
****20000*******
*****20000******
******20000*****
*******20000****

is the owner of **TWENTY THOUSAND**

FULLY PAID AND NON-ASSESSABLE SHARES OF THE COMMON STOCK

# CERTIFICATE OF STOCK

of The Southern Company (hereinafter called the Corporation) transferable on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this certificate properly endorsed. This certificate and the shares represented hereby are issued and shall be held subject to all the provisions of the Certificate of Incorporation and all amendments thereto (copies of which are on file with the Transfer Agents) to all of which the holder by the acceptance hereof assents. This certificate is not valid unless countersigned by a Transfer Agent and registered by a Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: JUN 01, 1999

The Southern Company

SECRETARY

BY

PRESIDENT

COUNTERSIGNED AND REGISTERED:
SOUTHERN COMPANY SERVICES, INC.
TRANSFER AGENT AND REGISTRAR
BY
AUTHORIZED SIGNATURE

AMERICAN BANK NOTE COMPANY

# EXHIBIT E

WELLS FARGO **Transaction Search**

# Print Images

Date/Time Printed: 11/09/2022 1:54 PM PDT

Check 716126 - 48,735.01 USD

**Southern Company**
**Common Stock**

Equiniti Trust Company
Disbursing Agent

Payable Date
07/18/2022

0716126

17-1
910

Payable at:
Wells Fargo Bank, N.A.

Replacement Check

Forty Eight Thousand Seven Hundred Thirty Five & 01/100 U.S. Dollars

AMOUNT OF CHECK
***$48,735.01***

Void after 180 days

Pay to the order of

SPILIOS MOUSALIMAS TR
SPILIOS MOUSALIMAS TRUST 5/3/99
PO BOX 148
AURORA OH 44202-0148

CUSIP NUMBER: 842587107
SOU1 3502492654

Authorized Signature
*Signature may be computer generated*

0716126

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

⑈0716126⑈ ⑆091000019⑆ 6711363231⑈

20220811 000100226989 07000307002

The security features listed below, as well as those not listed, exceed industry guidelines.

20220811 000100226989 07000307002

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
• RESERVED FOR FINANCIAL INSTITUTION USE •

for Deposit Only

ENDORSE HERE

001050 1458636 000000 001051 002102 01/01

Item Details

| | |
|---|---|
| Account Number | 6711363231 |
| Account Name | IPS - Team F |
| Check | 716126 |
| Amount | 48,735.01 USD Debit |
| BAI Code | 475 |
| Transaction Type | CHECK PAID |
| Posting Date | 08/11/2022 |
| As of Date | 08/11/2022 |
| Additional Item Details | CHECK 0000147 +000000123601276 |
| Item Sequence Number | 008188369980 |
| Bank ID | 091000019 |

# EXHIBIT 2

BEN SUTER, CASB No. 107680
ben.suter@kyl.com
AMANDA L. BOTELHO, CASB No. 352231
amanda.botelho@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
578 Jackson Street
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Defendant
EQUINITI TRUST COMPANY, LLC
erroneously named herein as EQUINITY TRUST COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999, \| NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUINITY TRUST COMPANY, a New York limited liability company, FIFTH THIRD BANK, N.A., a national banking association, THE TRAVELERS COMPANIES, INC., a Minnesota corporation, JODY LON MILLARD, an individual, and DOEs 1-25, inclusive,<br><br>Defendants. | Case No. 3:25-cv-01853-SK<br><br>**DEFENDANT EQUINITI TRUST COMPANY, LLC'S ANSWER TO COMPLAINT** |

Defendant EQUINITI TRUST COMPANY, LLC erroneously named herein as EQUINITY TRUST COMPANY ("Equiniti" or "Defendant") answers the Complaint ("Complaint") of Plaintiffs FANI KOKKOROS, as the Trustee of the Spilios Mousalimas Trust dated May 3, 1999 and NICK G. TARLSON, as the Special Trustee of the Spilios Mousalimas Trust appointed July 12, 2022 (collectively, "Plaintiffs") as follows:

///

**PARTIES**

1. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint and, therefore, denies the same.

2. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint and, therefore, denies the same.

3. Equiniti admits the allegations in Paragraph 3 of the complaint except as to its address, which it denies. Equiniti's headquarters is located at 48 Wall Street, 23rd floor. New York, NY 10043.

4. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint and, therefore, denies the same, except Equiniti admits (i) the existence of the Medallion Signature Guarantee program, the terms of which are set forth in various agreements, and (ii) that Equiniti is entitled to indemnity from others in connection with the matters alleged in the Complaint. To the extent that this Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations, Equiniti has no obligation to admit or deny such contentions or arguments. Except as set forth above, Equiniti denies the balance of the allegations of this Paragraph.

5. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint and, therefore, denies the same.

6. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint and, therefore, denies the same.

7. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint and, therefore, denies the same.

**JURISDICTION AND VENUE**

8. Equiniti denies that this Federal Court—to which the State Court Complaint was removed—is a court of general jurisdiction, but Equiniti admits that this Court has subject matter jurisdiction.

9. Admitted.

10. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint and, therefore, denies the same.

## STATEMENT OF FACTS

11. Equiniti denies that the allegations set forth in the Complaint concern "the wrongful registration and transfer by Equiniti of securities and stock dividends." To the extent that this Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations, Equiniti has no obligation to admit or deny such contentions or arguments. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11 of the Complaint and, therefore, denies the same.

12. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint and, therefore, denies the same.

## FIRST CAUSE OF ACTION

(Wrongful Registration And Transfer Of Securities)

(Against Equiniti Trust Company, LLC and Jody Lon Millard)

13. Equiniti realleges and incorporates by reference its above responses to the allegations in the Complaint.

14. This Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations. Equiniti has no obligation to admit or deny such contentions or arguments. If, and to the extent that a further response is required, Equiniti denies that it failed to comply in any respect with its legal obligations as a stock transfer agent.

15. This Paragraph sets forth legal contentions and/or arguments and/or legal citations, as opposed to factual allegations. Equiniti thus has no obligation to admit or deny such contentions, arguments or legal citations. If, and to the extent that a further response is required, Equiniti denies that it failed to comply in any respect with its legal and/or contractual obligations as a stock transfer agent, and Equiniti affirmatively states that it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint.

16. This Paragraph sets forth legal contentions and/or arguments and/or legal citations, as opposed to factual allegations. Equiniti thus has no obligation to admit or deny such contentions, arguments or legal citations. If, and to the extent that a further response is required, Equiniti denies that it failed to comply in any respect with its legal and/or contractual obligations as a stock transfer agent,

and Equiniti affirmatively states that it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint.

17. This Paragraph sets forth legal contentions and/or arguments and/or legal citations, as opposed to factual allegations. Equiniti thus has no obligation to admit or deny such contentions, arguments or legal citations. If, and to the extent that a further response is required, Equiniti denies that it failed to comply in any respect with its legal and/or contractual obligations as a stock transfer agent, and Equiniti affirmatively states that it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint.

18. Equiniti admits that it acted as the Stock Transfer Agent in connection with the transaction highlighted in this Paragraph and further admits that a Medallion Signature Guarantee was provided by Defendant Fifth Third Bank, N.A. Equiniti denies that Equiniti was on notice – or should have been on notice – that the transaction was irregular and/or that Equiniti should not completed the transfer. To the extent that this Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations, Equiniti has no obligation to admit or deny such contentions or arguments. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 18 of the Complaint and, therefore, denies the same.

19. Equiniti admits that it acted as the Stock Transfer Agent in connection with the transaction highlighted in this Paragraph and further admits that a Medallion Signature Guarantee was provided by Defendant Fifth Third Bank, N.A. Equiniti denies that Equiniti was on notice – or should have been on notice – that the transaction was irregular and/or that Equiniti should not complete the transfer. To the extent that this Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations, Equiniti has no obligation to admit or deny such contentions or arguments. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19 of the Complaint and, therefore, denies the same.

20. Equiniti admits that it acted as the Stock Transfer Agent in connection with the transaction highlighted in this Paragraph and further admits that a Medallion Signature Guarantee was provided by Defendant Fifth Third Bank, N.A. Equiniti denies that Equiniti was on notice – or should have been on notice – that the transaction was irregular and/or that Equiniti should not complete the

transfer. To the extent that this Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations, Equiniti has no obligation to admit or deny such contentions or arguments. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 20 of the Complaint and, therefore, denies the same.

21. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 of the Complaint and, therefore, denies the same.

22. . Equiniti denies the allegation that any check was deposited into an Equiniti Account at Wells Fargo. Otherwise, Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 of the Complaint and, therefore, denies the same

23. Equiniti lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint and, therefore, denies the same.

24. Equiniti denies that the "property was wrongfully transferred to Millard by Equiniti." Equiniti admits that after it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint, it communicated with Plaintiffs and/or their attorney regarding their claims of fraudulent activity, some of which communications are identified in Paragraph 24. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

25. Equiniti admits that after it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint, it further communicated with Plaintiff Tarlson regarding Plaintiffs' claims of fraudulent activity, as set forth in Paragraph 25. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

26. Equiniti admits that after it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint, it further communicated with Plaintiff Tarlson regarding Plaintiff's claims of fraudulent activity, as set forth in Paragraph 26. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

27. Equiniti admits that after it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint, it further communicated with Plaintiff Tarlson regarding Plaintiff's claims of fraudulent activity, as set forth in Paragraph 27. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

28. Equiniti admits that after it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint, it further communicated with Plaintiff Tarlson regarding Plaintiff's claims of fraudulent activity, as set forth in Paragraph 28. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

29. Equiniti admits that after it complied with all of its legal and contractual obligations in connection with the transactions that are the subject of the Complaint, it further communicated with Plaintiff Tarlson on June 8, 2023 regarding Plaintiff's claims of fraudulent activity, as set forth in Paragraph 29. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

30. Equiniti admits that under the Medallion Signature Guarantee program, a demand for indemnity should be made in the event of a wrongful transfer of securities pursuant to a forged or otherwise ineffective endorsement. Equiniti denies that "[i]t may be inferred that no such 'demand for indemnity' under the Medallion Program Indemnity Agreement was made by EQUINITI as the Transfer Agent upon the Guarantor, FIFTH THIRD," and Equiniti affirmative states that a demand for indemnity was made to Fifth Third Bank, N.A. To the extent that this Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations, Equiniti has no obligation to admit or deny such contentions or arguments. Equiniti lacks information or knowledge sufficient to form a belief as to the remaining allegations in paragraph 30 of the Complaint, and therefore, denies the same. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

31. Equiniti admits that the Medallion Program's Application and Subscription Agreement set forth the rights and obligations of the parties to the Medallion Signature Guarantee program, and that Paragraph 31 sets forth some, but not all of those rights and obligations, *i.e.,* (i) the Guarantor, such as Fifth Third Bank, N.A., must acknowledge receipt of the demand in writing within three business days, (ii) the Guarantor's "failure to satisfy a demand within ten (10) business days after receipt" will constitute a default under the Indemnity Agreement, entitling the Transfer Agent to present the demand as a claim under the Guarantor's Medallion Program Surety Bond. Equiniti lacks information or knowledge sufficient to form a belief as to the remaining allegations in paragraph 31 of the Complaint, and therefore, denies the same. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

32. This Paragraph sets forth legal contentions and/or arguments, as opposed to factual allegations. Equiniti has no obligation to admit or deny such contentions or arguments. If, and to the extent that a further response is required, Equiniti denies that it failed to comply in any respect with its legal obligations as a stock transfer agent. Equiniti lacks information or knowledge sufficient to form a belief as to the remaining allegations in paragraph 32 of the Complaint, and therefore, denies the same. Except as admitted, Equiniti denies the balance of the allegations in this Paragraph.

**SECOND CAUSE OF ACTION**

(Default Under Medallion Guaranty Indemnity Agreement)

(Against Fifth Third Bank, N.A.)

33.–36. The Second Cause of Action is not directed at Equiniti and therefore no response is required from Equiniti. To the extent that a response is required, Equiniti realleges and incorporates by reference its above responses to the allegations in the Complaint. Except as admitted in its above responses, Equiniti denies the allegations in Paragraphs 33.–36.

**THIRD CAUSE OF ACTION**

(Failure To Indemnify By Issuer Of Surety Bond)

(Against The Travelers Companies, Inc.)

37.–39. The Third Cause of Action is not directed at Equiniti and therefore no response is required from Equiniti. To the extent that a response is required, Equiniti realleges and incorporates by reference its above responses to the allegations in the Complaint. Except as admitted in its above responses, Equiniti denies the allegations in Paragraphs 37.–39.

**AFFIRMATIVE DEFENSES**

40. In response to Plaintiffs' Complaint, Equiniti asserts the following affirmative and other defenses, without assuming the burden of proof when such burden would otherwise be Plaintiffs' burden.

**FIRST AFFIRMATIVE DEFENSE**

(Failure To State A Claim)

41. The Complaint fails to state a claim against Equiniti upon which relief may be granted.

///

**SECOND AFFIRMATIVE DEFENSE**

(Duty To Mitigate)

42. Equiniti allege that Plaintiffs were and are under a duty to mitigate damages, if any, and that Plaintiffs failed to fulfill such duties. As a consequence, Equiniti was and is exonerated from any liability to Plaintiffs and Plaintiffs' damages, if any, are the sole and proximate result of Plaintiffs' own failure to mitigate damages.

**THIRD AFFIRMATIVE DEFENSE**

(Indemnity)

43. Equiniti states that if there is any verdict in favor of Plaintiffs and against Equiniti, then Equiniti is entitled to indemnity from Co-Defendant, Fifth Third Bank, N.A.

**FOURTH AFFIRMATIVE DEFENSE**

(Contribution)

44. Defendants state that if there is any verdict in favor of Plaintiff and against Defendants, then Defendants are entitled to contribution from other persons or entities, specifically, from Co-Defendant Fifth Third Bank, N.A.

**FIFTH AFFIRMATIVE DEFENSE**

(Laches)

45. Equiniti alleges that Plaintiffs' Complaint, and each cause of action therein, is barred by operation of the doctrine of laches.

**SIXTH AFFIRMATIVE DEFENSE**

(Unclean hands)

46. Equiniti alleges that Plaintiffs' Complaint, and each cause of action therein, is barred by Plaintiffs' unclean hands.

**SEVENTH AFFIRMATIVE DEFENSE**

(Estoppel)

47. Equiniti alleges that Plaintiffs, by virtue of their own independent acts or omissions, are estopped from seeking recovery against Equiniti.

///

**EIGHTH AFFIRMATIVE DEFENSE**

(Assumption Of The Risk)

48. Equiniti alleges that Plaintiffs' Complaint, and each cause of action therein, is barred because Plaintiffs assumed all risks associated with the conduct at issue.

**NINTH AFFIRMATIVE DEFENSE**

(Consent)

49. Equiniti alleges that Plaintiffs, though their action and inaction, acquiesced and consented to the conduct forming the basis of their Complaint, and are therefore precluded from recovery herein.

**TENTH AFFIRMATIVE DEFENSE**

(Comparative Negligence)

50. The alleged damages of Plaintiffs were proximately caused by Plaintiffs' own conduct or negligence, or the conduct or negligence of a third party/third parties.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Statute Of Limitations)

51. Plaintiffs' claim is barred, in whole or in part, by the applicable statutes of limitation, including but not limited to California Code of Civil Procedure ("CCP") § 337(a), CCP § 337(b), CCP § 337(c), CCP § 338(a), CCP § 338(d), CCP § 339(1), CCP § 339(3), CCP § 340(a) and CCP § 343.

**PRAYER**

**WHEREFORE**, Defendant prays for judgment as follows:

1. that the Complaint and each cause of action be dismissed with prejudice;
2. that judgment be entered in favor of Equiniti and against Plaintiffs;
3. that Equiniti be awarded costs of the suit;
4. that Equiniti be awarded its attorney's fees according to proof; and

///

///

5. that the Court award Equiniti such other and further relief as the Court may deem proper.

DATED: May 14, 2025

/s/ Ben Suter
BEN SUTER
AMANDA L. BOTELHO
KEESAL, YOUNG & LOGAN
Attorneys for Defendant
EQUINITI TRUST COMPANY, LLC
erroneously named herein as EQUINITY TRUST COMPANY

# **EXHIBIT 3**

# INDEMNITY AGREEMENT
## FOR FINANCIAL INSTITUTION ENROLLEES

To any issuer of securities, transfer agent, registrar, redemption agent, depository, trustee, paying, distributing or disbursing agent, bank, trust company, credit union, savings institution, mutual fund, broker/dealer, or similar financial services institution, and their respective legal representatives, successors and assigns (collectively, "Agents and Issuers"):

The undersigned ("Guarantor") has adopted (a) a STAMP Imprint for the purpose of executing guaranties of signatures (within the meaning of Section 8-306 of the Uniform Commercial Code) and for the purpose of executing other certifications and guaranties incident to the transfer, payment, exchange, purchase or delivery of securities, including, but not limited to, erasure guaranties and one-and-the-same guaranties, and (b) a STAMP Attorney Release Imprint for the purpose of executing powers of substitution. The STAMP Imprint and the STAMP Attorney Release Imprint are collectively referred to as the "Imprint."

In consideration of Agents and Issuers interposing no objections to the use of the Imprint for the purposes set forth above, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor does hereby, for itself and its successors and assigns, covenant and agree (a) to indemnify and hold harmless Agents and Issuers, and their officers, directors, agents and employees, in whatever capacity they may act, from and against any and all claims (whether groundless or otherwise), losses, liabilities, damages and expenses, including, but not limited to, costs, disbursements and counsel fees (whether incurred in connection with such claims, losses, liabilities, damages and expenses or in connection with the enforcement of any rights hereunder), arising out of or in connection with the transfer, payment, exchange, purchase or delivery of securities in reliance upon the Imprint, or, if Guarantor's negligence shall have contributed substantially thereto, an impression or imprint resembling or purporting to be the Imprint, when used as aforesaid; and (b) to indemnify and hold harmless

Travelers Casualty and Surety Company of America
(Insert the name of the Surety Company)

as Surety, from and against any and all claims, losses, liabilities, damages and expenses, including, but not limited to, costs, disbursements and counsel fees, by reason of its having acted in accordance with the STAMP Surety Bond which it has executed in favor of Agents and Issuers.

Guarantor will not assert as a defense against any claim for indemnity hereunder any law, ordinance or regulation of any jurisdiction outlawing or prohibiting the use of the Imprint as aforesaid, or assert any defense that the Imprint was *ultra vires*, which defenses are hereby expressly waived. Agents and Issuers will have no responsibility to authenticate or otherwise verify the Imprint's manual or facsimile signature, but shall be required to conduct themselves, when relying upon the Imprint, in a commercially reasonable manner.

This Indemnity Agreement will not be effective in respect of the Imprint, if the certificate representing the securities transferred, paid, exchanged, purchased or delivered in reliance thereupon is not genuine.

This Indemnity Agreement shall be deemed a New York contract and shall be governed as to all matters whatsoever, whether of validity interpretation, obligation, performance or otherwise, exclusively by the laws of the State of New York applicable to agreements made and fully to be performed in the State of New York, and all questions arising with respect thereto shall be determined in accordance with such laws.

Regardless of where actually delivered, this Indemnity Agreement shall be deemed to have been accepted by Agents and Issuers in the State of New York.

Guarantor hereby irrevocably consents to the jurisdiction of any state or federal court located in the State of New York for all disputes arising out of or relating to this Indemnity Agreement. Guarantor hereby agrees that venue for any proceedings shall be exclusively in such state or federal court and waives (a) any objection to venue and (b) any right to require any change of venue. Guarantor further hereby agrees that service of process in any proceedings may be made by certified mail, return receipt requested, directed to Guarantor at its address indicated below.

**IN WITNESS WHEREOF,**
Guarantor Has Duly Executed This Indemnity Agreement this 9th day of July, 2004

Fifth Third Bancorp
(Name of Guarantor)

By: [signature] (Seal)
(Authorized Signature (Officer or partner))

Title: Vice President & Controller

Address: 38 Fountain Square 109024
Cincinnati, OH 45263

### ACKNOWLEDGEMENT
(When Guarantor is a Partnership)

STATE OF ____________
COUNTY OF ____________ } ss.

On this ______ day of ______, 20___, before me personally came ____________, to me known, and known by me to be a member of the firm of ____________ ____________ described in and which executed the foregoing instrument, and he/she duly acknowledged to me that he/she executed the said instrument in the name of said firm and for its purposes and on its behalf.

____________ Notary Public

My commission expires ____________

### ACKNOWLEDGEMENT
(When Guarantor is a Corporation)

STATE OF Ohio
COUNTY OF Hamilton } ss.

On this 9th day of July, 2004, before me personally came David J. DeBrunner, to me known, who being by me duly sworn, did depose and say: that he/she resides at 38 Fountain Square Plaza Cincinnati OH 45263; that he/she is the VP & Controller of Fifth Third Bancorp, the corporation described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.

TAMI A. COX
Notary Public, State of Ohio
My Commission Expires November 6, 2008
Notary Public

My commission expires ____________

IA(10/93) SECURITIES TRANSFER AGENTS MEDALLION PROGRAM (STAMP) Over →